UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DECKERS OUTDOOR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11 C 10 |
| | ) | |
| DOES 1-55 d/b/a the aliases identified on Schedule A and DOES 56-500, | ) | Judge John W. Darrah |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Deckers Outdoor Corporation's ("Deckers") Motion for Entry of Default and Entry of Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) against Defendants, Does 1-55 d/b/a the aliases identified on Schedule A to Deckers' Amended Complaint (collectively, "the Defendants") based on Deckers' action for trademark infringement and counterfeiting.

Deckers is known as a source of high quality footwear products, including the UGG® (the "UGG Trademark") brand of premium sheepskin footwear.

Deckers filed this action on January 3, 2011, alleging federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), cyberpiracy (Count III) and violation of the Illinois Uniform Trade Practices Act (Count IV), and seeks statutory damages and injunctive relief. (Dkt. No. 5.) On the same day, Deckers filed an *ex parte* application for entry of a temporary restraining order and preliminary injunction. (Dkt. No. 49.) The Court granted Deckers' motion for a temporary restraining order on February 3, 2011 (*see* Dkt. No. 26), and converted the

temporary restraining order to a preliminary injunction on March 8, 2011 (*see* Dkt. No. 37).

On May 24, 2011, the Court denied Deckers' Motion for Entry of Default Judgment on the basis that Deckers had not established that the Court has personal jurisdiction over Does 1-55, consistent with the requirements recently set forth by the Seventh Circuit in *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011). (*See* Dkt. No. 50.)

Deckers filed an Amended Complaint on August 17, 2011. (Dkt. No. 56.) Deckers included newly discovered domain names linked to websites operated by Defendants and added new allegations relating to Defendants' illegal activities that were directed toward Illinois. (*See id.*) The Amended Complaint was served electronically on all Defendants on August 17, 2011. (*Id.*) None of the Defendants has entered an appearance or otherwise defended this action since being notified of this Action in February 2011. The time for responding to the Amended Complaint expired on August 31, 2011, pursuant to Fed. R. Civ. P. 15(a)(3).

In its Motion for Default Judgment pursuant to Rule 55(b)(2), Deckers seeks the entry of an Order, finding that each of the Defendants are liable on all counts of Deckers' Amended Complaint. Deckers further seeks an award of statutory damages pursuant to 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the 49 Defendants[1] in the amount of up to $2,000,000 per Defendant for use of a counterfeit UGG Trademark on products sold through each of the 271 Defendant Domain Names. Deckers also seeks an award of statutory damages pursuant to 15 U.S.C. §1117(d) of up

---

[1] Each unique registrant e-mail address is counted as a separate Defendant. The Defendant Domain Names identified are registered using 49 unique email addresses.

to $100,000 for each of the 140 Defendant Domain Names that incorporate Deckers'

UGG Trademark. Deckers further seeks entry of a permanent injunction, prohibiting

Defendants from selling products containing counterfeit UGG Trademarks, an order that

domain names used by Defendants to sell products containing counterfeit UGG

trademarks be permanently transferred to Deckers, and that all assets in Defendants'

financial accounts operated by PayPal, Inc. ("PayPal") be transferred to Deckers,

including the approximately $130,617 identified by Deckers.

## ANALYSIS

### *Entry of Default and Default Judgment*

Deckers has met its burden of making a *prima facie* case for personal jurisdiction

over Defendants. *See uBID, Inc. v. GoDaddy Group Inc.*, 623 F.3d 421, 423 (7th Cir.

2010); *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007).

Because Defendants have chosen not to appear or produce any evidence regarding their

illegal activities in Illinois, the allegations in the Amended Complaint, which must be

accepted as true, establish a *prima facie* case for personal jurisdiction against each

Defendant. (*See* Am. Compl. ¶¶ 2, 4, 8, 9 and 11-17.) *See Purdue Research Found. v.

Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a

plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are

accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Deckers has pled that each of the Defendants has targeted and solicited sales from

Illinois residents by operating English language websites that offer shipping to Illinois,

has accepted payment in U.S. dollars, and has sold counterfeit UGG products to residents

of Illinois. *See The Gen. Council of the Assemblies of God v. The Ranger Supply Store,*

3

*Inc. et al.*, No. 10 C 07050 (N.D. Ill. June 29, 2011) (entering default judgment against defendants who sold counterfeit products to Illinois residents through an Internet website) (*General Council*).

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P 55(a). "Although Rule 55(a) . . . refers to entry of default by the clerk, it is well-established that a default also may be entered by the court." *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982). When motion is made to the court for entry of a default, the decision to enter default lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993).

The Defendants were properly served on August 17, 2011. (*See* Dkt. No. 60, Gaudio Decl. at ¶ 15, Ex. 14). Despite having been served with process, the Defendants have ignored these proceedings and failed to plead or otherwise defend this action. (*Id.* at ¶ 16). Therefore, Deckers has met the requirements for entry of default against the Defendants pursuant to Rule 55(a).

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that Defendants are liable to Plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the Complaint – except those relating to damages – are taken as true and may not be challenged and the

4

defendants are liable as a matter of law as to each cause of action alleged in the complaint. Fed. R. Civ. P. 8(b)(6); *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

Deckers has therefore shown the following:

1.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Deckers' investigation has shown that Defendants have set up fully interactive commercial Internet websites, operating under the 271 domain names, which are identified in Schedule A attached to Deckers' Amended Complaint and Schedule B attached to Deckers' Memorandum in Support of its Motion for Default Judgment, Docket Number 64 (collectively, the "Defendant Domain Names"). (Am. Compl. ¶ 2.) Through these Domain Names, Defendants have targeted and solicited sales from Illinois residents by operating English language websites that offer shipping to Illinois, have accepted payment in U.S. dollars and, on Deckers' information and belief, have sold counterfeit UGG products to residents of Illinois. (*Id.*) Each of the Defendants is committing tortuous acts in Illinois, is engaging in interstate commerce and has wrongfully caused Deckers substantial injury in the State of Illinois. (*Id.*)

3.    Deckers is famous throughout the United States and elsewhere as a source of high quality footwear products, including the UGG® brand of premium sheepskin footwear. (*Id.* ¶ 4.) Deckers' UGG products are distributed and sold to consumers through retailers throughout the United States, including through over 100 authorized retailers in Illinois, the uggaustralia.com website, and UGG

Concept Stores, including a Concept Store located at 909 North Rush Street in Chicago, Illinois. (*Id.*)

4. Since acquiring the UGG Trademark and the goodwill of the business in 1995, Deckers has continuously sold footwear and clothing under the UGG Trademark. (*Id.* ¶ 5.) Deckers has built substantial goodwill in the UGG Trademark and the UGG Trademark, is famous and a valuable asset of Deckers. (*Id.*)

5. Deckers holds registrations for the UGG Trademark (and stylized variations) in more than 100 countries around the world, including U.S. Trademark Registration No. 3,050,925. (*Id.* ¶ 6.) The UGG Trademark has been used continuously since as early as 1979 by Deckers and its predecessors in interest. (*Id.*) The registration is valid and subsisting. (*Id.*)

6. The UGG Trademark is distinctive when applied to high quality apparel, footwear and related merchandise, signifying to the purchaser that the products come from Deckers and are manufactured to the highest quality standards. (*Id.* ¶ 7.) Whether Deckers manufactures the products itself or licenses others to do it, Deckers has insured that products bearing its trademarks are manufactured to the highest quality standards. (*Id.*) Deckers' products branded under the UGG Trademark have been widely accepted by the public and are enormously popular, as demonstrated by hundreds of millions of dollars in sales each year. (*Id.*) The UGG Trademark is a famous mark. (*Id.*)

7. Defendants are unknown individuals and business entities who, upon the information and belief of Deckers, reside in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement legal systems.

(*Id.* ¶ 8.) Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites operating under the Defendant Domain Names. (*Id.*)

8.      Defendants are directly and personally contributing to, inducing, and engaging in the sale of counterfeit products bearing UGG Trademarks. (*Id.* ¶ 9.) The counterfeit products for sale on the Defendant Domain Names bear similar irregularities and indicia of being counterfeit to one another, indicating that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. (*Id.*) In addition, the websites linked to Defendant Domain Names include multiple similarities, such as the same page layout, text, and copyright protected images copied from Deckers' uggaustralia.com website. (*Id.*)

9.      Defendants are liable on all counts of Deckers' Amended Complaint, specifically for trademark infringement (*see* Dkt. No. 56 at ¶¶ 18-24); false designation of origin (*id.* at ¶¶ 25-29); cybersquatting (*id.* at ¶¶ 30-35); and violation of the Illinois Deceptive Trades Practices Act (*id.* ¶¶ 36-29).

*Statutory Damages*

As set forth above, Defendants are liable for violations of the Lanham Act. Consequently, Deckers first moves for statutory damages pursuant 15 U.S.C. § 1117(c)(2), for willful trademark counterfeiting against each of the 49 Defendants in the amount of up to $2,000,000 per Defendant for use of a counterfeit UGG Trademark, pursuant to 15 U.S.C. § 1117(d).

The Lanham Act allows a plaintiff to elect, at any time before final judgment is rendered, one of two alternative recovery options for trademark infringement: (1) the actual damages caused by the infringement, 15 U.S.C. § 1117(a); or (2) statutory damages, 15 U.S.C. § 1117(c). Courts commonly find statutory damages appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed. *See Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874 (S.D. Ohio 2007); *Chanel, Inc. v. French*, No. 05-61838, 2006 WL 3826780, *2 (S.D. Fla. Dec. 27, 2006); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004); *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 123 (S.D.N.Y. 2003); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003); *Sara Lee Corp. v. Bags of New York*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999).

Section 1117(c)(1) allows statutory damages of "not less than $1,000 and no more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). "If the court finds that the use of the counterfeit mark was willful," Section 1117(c)(2) allows a statutory damages award of up to $2,000,000 per counterfeit mark. 15 U.S.C. § 1117(c)(2).

"Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S&M Cent. Service Corp.*, No. 03 C 4986, 2004 WL 2534378, *7 (N.D. Ill. Nov. 8, 2004) (*Lorillard Tobacco Co.*). As such, knowledge need not be proven directly but can be inferred from a defendant's conduct. *Id.* Willful infringement may be shown by the fact that the "defendant ignored

the plaintiff's notices[,] did not seek advice of an attorney, and passed the matter off as a nuisance." *Id.*

Deckers has sufficiently demonstrated that Defendants' use of the UGG Trademark was willful. (*See* Am. Compl. ¶¶ 9, 12.) Under circumstance similar to those presented here, in *General Council*, the district court deemed defendants' use of plaintiff's trademark willful where the defendants were in default. (*See* 6/29/11 Order, Dkt. No. 47, *General Council*, No. 10-cv-7050.) *See also Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

While § 1117(c) sets out a dollar range for possible statutory damage awards, the statute does not provide guidance on how to select a damage figure within that range. Courts assessing statutory damages under § 1117(c) have looked to case law applying the statutory damage provision of the Copyright Act, 17 U.S.C. § 504(c), for guidance. *See Lorillard Tobacco Co.*, 2004 WL 2534378 at *4. Addressing 17 U.S.C. § 504(c) in *Chi Boy Music v. Charlie Club.*, 930 F.2d 1229 (7th Cir. 1991) (*Chi-Boy Music*), the Seventh Circuit held that a court awarding statutory damages is "not required to follow any rigid formula but instead enjoys wide discretion."

An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest. *Sands, Taylor & Wood v. The Quaker Oats Co.*, 34 F.3d 1340, 1348 (7th Cir. 1994). As such, the remedy imposed under statute must provide sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Id.* Statutory damages are appropriate to "penalize the infringer and deter future violations" when the infringement is willful. *Lorillard Tobacco Co.*, 2004 WL 2534378 at *4 (quoting *Chi Boy Music*, 930 at 1230).

9

Deckers requests an award up to the maximum statutory damages award authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the 49 Defendants in the amount of $2,000,000 per Defendant, which totals $98,000,000. Elsewhere in its Motion, Deckers notes that this case is "virtually identical to the facts" in *General Council* (Mem. at 11), which involved a non-Illinois trademark owner suing non-Illinois based Defendants for selling counterfeit products to Illinois residents over an Internet website.

In *General Council*, the district court entered an order for default judgment on the plaintiff's claims, among them trademark infringement and copyright infringement. In its motion for default judgment, plaintiff requested $2,000,000 per counterfeit mark. Holding that defendants' use of the trademark was willful, the court awarded $750,000 per infringing use of counterfeit marks. Based on the similarities between the cases, such a statutory award is reasonable and will be applied here. Plaintiff is awarded $750,000 against each of the 49 Defendants for use of a counterfeit UGG Trademark, for a total of $36,750,000.

Second, Deckers moves for statutory damages pursuant to 15 U.S.C. § 1117(d) on the grounds that Defendants violated Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d). 15 U.S.C. § 1117(d) provides that:

> In a case involving a violation of section 1125(d)(1) of this title, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just.

Deckers requests statutory damages of up to $100,000 for each of the 140 Defendant Domain Names that incorporate Deckers' UGG Trademark.

An award of $50,000 per domain name, for each of the 140 Defendant Domain Names that incorporate Deckers' UGG Trademark, for a total of $7,000,000, is reasonable and consistent with *General Council*, which, as discussed above, involved similar circumstances. (*See* 6/29/11 Order, Dkt. No. 47, *General Council*, No. 10-cv-7050 (awarding $50,000 per domain name under 15 U.S.C. § 1117(d) where plaintiff requested $100,000 per domain name).)

**CONCLUSION**

It is hereby ordered that Deckers' Motion for Entry of Default and Motion for Entry of a Default Judgment is granted in its entirety and that Defendants, d/b/a the aliases identified on Schedule A to Deckers' Amended Complaint are deemed in default; and this Final Judgment is entered against Defendants.

It is further ordered:

1.    Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

    a.    using Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof in any manner in connection with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark;

b.    passing off, inducing, or enabling others to sell or pass off any product as a genuine UGG branded product or any other product produced by Deckers, that are not Deckers' or not produced under the authorization, control or supervision of Deckers and approved by Deckers for sale under Deckers' UGG Trademark;

c.    committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Deckers, or sponsored or approved by, or connected with Deckers;

d.    further infringing Deckers' UGG Trademark and damaging Deckers' goodwill;

e.    otherwise competing unfairly with Deckers in any manner;

f.    shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Deckers, nor authorized by Deckers to be sold or offered for sale, and which bear any Deckers' UGG Trademark or any reproductions, counterfeit copy or colorable imitation thereof;

g.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other domain name that is being used to sell counterfeit UGG products; and

h.     operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, advertising, offering for sale, or sale of any product that is not a genuine Deckers' UGG branded product or not authorized by Deckers to be sold in connection with Deckers' UGG Trademark.

2.    The registrars and registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc. and the Public Interest Registry are required to:

a.     prevent the Defendant Domain Names from linking to corresponding counterfeit websites; and

b.     at Deckers' election, transfer to Deckers' control or cancel the Defendant Domain Names and any other domain names owned by Defendants, including any domain names registered using the registrant email addresses listed below, that have been identified as being used to engage in their counterfeiting of the UGG Trademark.

3.    Those in privity with Defendants and those with notice of the injunction, including any Internet search engines, web hosts, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites through which Defendants engage in the sale of counterfeit and infringing goods using the UGG Trademark;

13

4.    That pursuant to 15 U.S.C. § 1117(c)(2), Deckers is awarded statutory damages from each of the 49 Defendants in the amount of seven-hundred-fifty-thousand dollars ($750,000) for use of a counterfeit UGG Trademark on products sold through at least the Defendant Domain Names, for a total award in the amount of thirty-six million seven-hundred-fifty thousand dollars ( $36,750,000).

5.    That pursuant to 15 U.S.C. § 1117(d), Deckers is awarded statutory damages for each the 140 Defendant Domain Names that incorporate the UGG Trademark in the amount of fifty thousand dollars ($50,000), for a total award in the amount of seven million dollars ($7,000,000).

6.    That pursuant to 15 U.S.C. § 1117(a), Deckers is awarded reasonable attorney's fees.

7.    That all monies currently restrained in Defendants' financial accounts, including monies held by PayPal, are hereby released to Deckers as partial payment of the above-identified damages; and PayPal is ordered to release to Deckers said amounts from Defendants' PayPal accounts within ten (10) business days of receipt of this Order.

Date: 10 . 14 - 11

JOHN W. DARRAH
United States District Court Judge

14